UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RONALD ALLEN HICKS,
    Plaintiff

v.

NANCY A. BERRYHILL, Commissioner of Social Security,
    Defendant

Case No. 3:16-cv-00727
District Judge Trauger
Magistrate Judge King

### REPORT AND RECOMMENDATION
To The Honorable Aleta A. Trauger, District Judge

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Docket 1. The Commissioner filed an electronic copy of the administrative record. Docket 13. Plaintiff filed his Motion for Judgment on the Record, along with a supporting memorandum of law. Dockets 18 and 19. The Commissioner responded in opposition. Docket 20. The matter is ripe for determination.

On July 7, 2017, the Court referred the matter to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 631 and 636 and Administrative Order No. 24. Section 631 authorizes designation of magistrate judges to serve in districts adjoining the district for which they were appointed. Administrative Order No. 24 was entered on June 12, 2017, and signed by the Chief Judges for the Middle District of Tennessee and the Western District of Kentucky. Section 636 authorizes magistrate judges to submit reports and recommendations to district judges on any case-dispositive matter.

Because the administrative law judge's (ALJ's) decision was supported by substantial evidence and was in accord with applicable legal standards, the RECOMMENDATION will be to DENY Plaintiff's Motion for Judgment on the Record (Docket 18); AFFIRM the Commissioner's final decision; and DISMISS Plaintiff's complaint.

**I. Plaintiff's challenge to the ALJ's decision**

Plaintiff argues that the ALJ's residual functional capacity (RFC) findings for the closed period from May 24, 2005, through June 30, 2009 were not in accord with the rules for weighing medical opinions. The argument may be broken down into the following specific challenges:

    A.  The ALJ's adjudication of Plaintiff's Title II claim (finding of lack of disability) for the closed period.

    B.  The ALJ's RFC findings for the closed period.

    C.  The ALJ's application of the rules for weighing medical opinions.

**A. Plaintiff challenges the ALJ's adjudication of his Title II claim (finding lack of disability) for the closed period from May 24, 2005, through June 30, 2009.**

In September 2004, Plaintiff filed applications for Disability Insurance Benefits under Title II and Supplemental Security Income Benefits under Title XVI of the Social Security Act. An ALJ issued an unfavorable decision; the Appeals Council remanded for consideration of new and material evidence; and Plaintiff voluntarily abandoned his claims in April 2008. Docket 13, Administrative Record (AR), p. 19.

In November 2010, Plaintiff filed new applications for benefits, alleging that he became disabled on May 8, 2008. In August 2012, the ALJ issued a partially-favorable decision, finding that Plaintiff became disabled and eligible for Title XVI benefits beginning on his fiftieth birthday, December 17, 2011. AR, p. 170. The finding was based on a direct application of Rule 201.10 of Appendix 2 of the regulations. AR, p. 169. The ALJ found that Plaintiff was not disabled and not entitled to Title II benefits during the closed period from May 8, 2008 (his alleged onset of disability date) through June 30, 2009 (the date he was last insured for Title II benefits). AR, pp. 162, 168, and 170.

In December 2013, the Appeals Council remanded for a new decision on Plaintiff's Title II claim. AR, pp. 178-182.

On remand, Plaintiff amended his alleged onset of disability date from May 8, 2008 to May 24, 2005. AR, pp. 133 and 386. The amended onset date corresponds to the date of completion by Plaintiff's treating physician, Richard Rutherford, of the standard physical assessment form. As discussed below, Plaintiff relies on Dr. Rutherford's opinion in support of his Title II disability claim.

In August 2014, the ALJ issued the Commissioner's final decision, which is the subject of the present judicial review. AR, pp. 19-39. The ALJ found that Plaintiff was not disabled and not entitled to Title II benefits during the closed period from May 24, 2005 through June 30, 2009. Plaintiff challenges this aspect of the ALJ's decision.

### B. Plaintiff challenges the ALJ's RFC findings for the closed period.

The ALJ found (as required at Step 1 of the sequential evaluation process for evaluating all disability claims) that Plaintiff did not engage in substantial gainful activity during the closed period. AR, p. 22.

The ALJ found (Step 2) that, during the closed period, Plaintiff suffered from the following medically-determinable impairments: "coronary artery disease; chronic obstructive pulmonary disease/asthma; diabetes mellitus; arthritis; sleep apnea; lumbar radiculopathy; cervical disc protrusion C6-7; bilateral peroneal nerve dysfunction – peroneal neuropathy; obesity; depressive disorder; anxiety disorder and borderline intellectual functioning." AR, p. 23.

The ALJ found (Step 3) that Plaintiff did not suffer from a medical impairment satisfying the clinical criteria of any impairment listed in Appendix 1 of the regulations. AR, p. 23.

The ALJ found (Step 4) that Plaintiff was unable to perform any past relevant work. AR, p. 37.

The ALJ found (as a prerequisite to Step 5) that Plaintiff had the RFC to perform a limited range of unskilled, sedentary work, more specifically: "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could lift and/or carry 10 pounds occasionally and 10 pounds frequently; stand and/or walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday;

occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladder/rope/scaffolds; and avoid concentrated exposure to temperature extremes and pulmonary irritants. The claimant could perform detailed tasks and instructions; have less than occasional interaction with the public; and adapt to infrequent change in the workplace." AR, p. 25.

The ALJ found (Step 5) that Plaintiff was not disabled because, although he could not perform his past relevant work, he retained the ability to perform a significant number of unskilled, sedentary jobs in the national economy. This finding was based on the ALJ's acceptance of testimony from a vocational expert (VE) contemplating the ALJ's RFC findings. AR, p. 38.

Plaintiff challenges the ALJ's RFC findings for the closed period.

### C. Plaintiff challenges the ALJ's application of the rules of weighing medical opinions for purposes of determining his RFC during the closed period.

Judicial review of the Commissioner's final decision contemplates a deferential (as opposed to a de-novo) standard of review. The Court will not disturb an ALJ's decision if it is supported by substantial evidence and is in accord with applicable legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Comm'r of Soc. Sec.*, 246 F.3d 762, 772 (6th Cir. 2001)). An ALJ's decision must stand if it is supported by substantial evidence -- even if substantial evidence supports the opposite conclusion. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's arguments focus on the ALJ's weighing of the medical opinions in support of a finding that he could perform a limited range of unskilled, sedentary work during the closed period from May 24, 2005, through June 30, 2009. The Court must determine whether this finding was supported by substantial evidence and in accord with the rules for weighing medical opinions.

4

## II. Summary of the relevant medical records

The administrative record contains the following medical opinions bearing on the issue of Plaintiff's RFC during the closed period: Treating-source opinions from Drs. Rutherford and Allen; examining-source opinions from Drs. Johnson and Wagner; and non-examining source opinions from Drs. Montague-Brown and Thrush.

On May 24, 2005 (the alleged onset of disability date), Plaintiff's treating physician, Richard Rutherford, completed the physical assessment form. Dr. Rutherford found, among other things, that Plaintiff can sit for 4 hours (total) and stand/walk for 4 hours (total) during an 8-hour workday. AR, p. 620. Dr. Rutherford was not asked and did not identify the particular medical or clinical findings, if any, that supported this finding. The finding, if accepted, is incompatible with the ALJ's finding that Plaintiff can perform sedentary work. *See* Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5 (For sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday").

In May 2007, Plaintiff experienced a worsening of symptoms, and Dr. Rutherford referred Plaintiff to neurologist W. Garrison Strickland, M.D. AR, p. 576.

In July 2007, Vaughan Allen, M.D., performed a laminectomy / decompression of a herniated nucleus pulposus at L4-L5. AR, pp. 694 and 1391. In August 2017, Dr. Allen reported that Plaintiff was "doing delightfully well" after surgery. AR, p. 696.

On January 4, 2008, Plaintiff was rear-ended in an automobile accident. AR, p. 698. On January 10, 2008, he reported to a nurse practitioner that he was experiencing low back pain radiating into the buttocks. *Id.* On January 23, 2008, Dr. Allen opined, notwithstanding the automobile accident (and inconsistently with Dr. Rutherford's opinion which would preclude even sedentary work), that "[i]t would be my opinion that you could work, although you would have to avoid repetitive bending and heavy lifting, by heavy I mean over 50 pounds on occasion and over 30 pounds repetitively." AR, p. 699.

In February 2011, Plaintiff was examined at the request of the Commissioner by Roy Johnson, M.D. Dr. Johnson's narrative report is at AR, pp. 849-851, and his completion of the physical assessment form is at AR, pp. 847-848. Dr. Johnson found that Plaintiff can lift 10 pounds occasionally and frequently and can sit for about 6 hours (total) and stand/walk for at least 2 hours (total) during an 8-hour workday. AR, p. 848. Dr. Johnson reported that Plaintiff has no other physical limitations such as postural, manipulative, environmental, visual, aural, or speech. *Id.*

In April 2011, based on Dr. Johnson's findings and the medical evidence as a whole, the Commissioner's non-examining program physician, Karla Montague-Brown, completed the physical assessment form, concurring with Dr. Johnson regarding Plaintiff's abilities to sit/stand/walk. AR, p. 884. In May 2011, another program physician, Thomas Thrush, concurred with Dr. Montague-Brown's opinion. AR, p. 911.

In August 2013, William Schooley, M.D., performed an anterior lumbar interbody fusion with pedicle screw fixation at L5-S1. AR, pp. 1009 and 1391.

In February 2014, Plaintiff was examined at the request of the Commissioner by Martin Wagner, M.D. Dr. Wagner's narrative report is at AR, pp. 1123-1124, and his completion of the physical assessment form is at AR, pp. 1113-1122. Among other things, Dr. Wagner opined that Plaintiff can sit for 2 hours (total) and stand/walk for 2 hours (total) during an 8-hour workday. AR, p. 1114. Like Dr. Rutherford's 2005 opinion, Dr. Wagner's opinion, if accepted, is incompatible with the ALJ's finding that Plaintiff can perform sedentary work. *See* Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5.

When asked to identify the particular medical or clinical findings that support this finding, Dr. Wagner responded "lumbar radiculopathy and imbalance." *Id.* Dr. Wagner was not asked and did not identify what Plaintiff's limitations were prior to June 30, 2009, when he was last insured for Title II benefits.

6

On March 12, 2014, Dr. Rutherford's certified physician's assistant, Peter F. Alfano, PA-C, completed the physical assessment form, which he and Dr. Rutherford jointly signed. The form found that Plaintiff can stand/walk for 15 minutes at one time and 60 minutes (total) in an 8-hour workday. AR, p. 1387. The form also found (in what appears to be an internally-inconsistent manner) that Plaintiff can sit for 30 minutes at a time but "none" during an entire workday. *Id.* The final question on the form was "[s]ince when have these limitations been at this severity?" The response was since "01/2004." AR, p. 1388. When asked to identify the particular medical or clinical findings that support these findings, the response was to see "attached MRI." *Id.* The referenced MRI was an interpretation by Jason Roth, M.D., of a lumbar MRI performed in January 2013. AR, pp. 1389-1390.

On March 25, 2014, Plaintiff was examined at the request of the Commissioner by Horace Watson, M.D. Dr. Watson's narrative report is at AR, p. 1391, and his completion of the physical assessment form is at AR, pp. 1392-1397. Among other things, Dr. Watson found that Plaintiff can sit for 3 hours (total) and stand/walk for 4 hours (total) in an 8-hour workday. AR, p. 1393. Dr. Watson left the portion of the form blank that asked him to identify the particular medical or clinical findings that support his findings. *Id.* Dr. Watson was not asked and did not identify what Plaintiff's limitations were prior to June 30, 2009.

### III. The ALJ's weighing of the medical opinions

The ALJ found that Plaintiff has a progressively-deteriorating low back impairment with radiculopathy that reached a disabling level of severity some time between June 30, 2009 (when Plaintiff's insured status for Title II benefits expired) and December 17, 2011 (his fiftieth birthday). AR, p. 170. The ALJ rejected Plaintiff's claim that the evidence supported a finding that his condition had reached a disabling severity level as early as May 24, 2005 (Plaintiff's alleged onset of disability date, which corresponds to the date of Dr. Rutherford's first disabling opinion).

7

The ALJ gave "significant weight" to the disabling 2014 opinions of Drs. Wagner, Rutherford, and Watson, which show that Plaintiff's disability "has continued and progressively gotten worse through 2014." ALJ's decision, AR, p. 36. The ALJ gave "no weight" to these opinions insofar as they purported to related to the period on or before June 30, 2009, because the opinions "did not address the onset [of disability] date issue and [they] are too remote in time in relation to the claimant's allegation [of disability beginning on May 24, 2005]." *Id.*

The ALJ gave "little weight" to Dr. Rutherford's disabling 2005 opinion in light of subsequent opinions of non-disability, specifically: 1) In 2008, Dr. Allen performed "delightfully" successful corrective surgery and opined that Plaintiff "could work, although [he] would have to avoid repetitive bending and heavy lifting, by heavy I mean over 50 pounds on occasion and over 30 pounds repetitively"; and 2) In 2011, Drs. Johnson, Montague-Brown, and Thrush opined non-disabling limitations. *Id.*

The ALJ gave "great weight" to the non-disabling 2011 opinions of Drs. Johnson, Montague-Brown, and Thrush. *Id.* The ALJ's RFC findings for the closed period are nearly identical to Dr. Montague-Brown's. *Compare* ALJ's RFC findings at AR, p. 25 and Dr. Montague-Brown's findings at AR, pp. 884-887.

### IV. Plaintiff's issues

Plaintiff presents the following specific contentions (in his own words):

1. The ALJ's RFC finding is contrary to law and not supported by substantial evidence because it fails to account for limitations described in the record and confirmed by opinions he assigned "great weight," without explaining why those limitations were rejected.

    a. The ALJ's physical RFC is defective for this reason.

    b. The ALJ's mental RFC is also defective for this reason.

2. The ALJ did not give good reasons to reject the opinion of Plaintiff's treating physician, Dr.

8

Rutherford.

     a. Dr. Rutherford's opinion.

     b. HARM: Dr. Rutherford's opinions plainly set forth greater, and more detailed, limitations than are accounted for in the ALJ's RFC; moreover, they meet Plaintiff's burden to produce evidence demonstrating that he is "disabled" as defined by the Agency.

     c. The ALJ did not give "good reasons" to reject Dr. Rutherford's opinion.

(Docket 19, p. 8).

### 1(a). The ALJ's RFC findings did not fail to incorporate disabling limitations opined by Drs. Rutherford and Wagner, which the ALJ purported to give great weight.

As stated above, the ALJ found that Plaintiff is disabled for Title XVI purposes beginning on December 17, 2011, and that he is not disabled for Title II purposes for the closed period from May 24, 2005 through June 30, 2009.

The ALJ found that, during this time frame, Plaintiff had an RFC to perform a limited range of unskilled, sedentary work. AR, p. 25. This finding was based on acceptance of Dr. Montague-Brown's findings.

Dr. Rutherford gave disabling opinions in 2005 and 2014 and Dr. Wagner gave a disabling opinion in 2014. The ALJ gave little weight to Dr. Rutherford's 2005 opinion; no weight to the 2014 opinions of Drs. Rutherford and Wagner to the extent these opinions purported to relate back prior to June 30, 2009; and significant weight to the 2014 opinions for the period after June 30, 2009. AR, p. 36.

Plaintiff argues that the ALJ's RFC is inconsistent with the ALJ's purporting to give significant weight to the disabling opinions of Drs. Rutherford and Wagner. Memorandum in support of Motion for Judgment on the Record, Docket 19, pp. 8-13.

The argument lacks a factual basis because the ALJ gave significant weight to these opinions only for the period after June 30, 2009 (which was relevant to Plaintiff's Title XVI claim). The ALJ gave no weight to these opinions to the extent they purported to relate back to the period on or before June 30,

2009. In other words, the argument unpersuasively attempts -- in the case of a progressively-deteriorating impairment -- to utilize the ALJ's acceptance of medical opinions supporting a Title XVI claim of disability in more recent years in support of a Title II claim of disability in more remote years.

Plaintiff produces a grid / chart in which he lists each specific finding from Drs. Rutherford, Johnson, Montague-Brown, and Wagner, which the ALJ allegedly accepted and which, if accepted (without time distinctions), would result in a more restrictive RFC than the ALJ's actual RFC findings. Docket 19, pp. 10-12. The chart is unpersuasive because the ALJ did not accept these findings to the extent they purported to relate to the closed period.

The ALJ's RFC findings did not fail to incorporate disabling limitations opined by Drs. Rutherford and Wagner, which the ALJ purported to give great weight.

**1(b). The ALJ's mental RFC findings were, at worst, harmless error.**

The ALJ found that Plaintiff has the following medically-determinable mental impairments: "depressive disorder; anxiety disorder and borderline intellectual functioning." AR, p. 23.

The administrative record contains two examining-source opinions and two non-examining source opinions regarding Plaintiff's mental limitations: 1) Linda Blazina, Ph.D., February 16, 2011 examination and narrative report (AR, pp. 841-841); 2) Dorothy Tucker, Ph.D., February 25, 2011 completion of mental assessment form (AR, p. 866-868); 3) Amin Azimi, Ed.D., May 18, 2011 mental assessment form (AR, pp. 931-933); 4) Leah Hawkins, M.A., February 4, 2014 examination and completion of mental assessment form by Ms. Hawkins and Kathryn Sherrod, Ph.D. (AR, pp. 1103-1110).

The ALJ's findings with respect to Plaintiff's mental impairments and limitations appear to be internally inconsistent for two reasons: 1) On one hand, the ALJ found that Plaintiff's "mental impairments are considered to be non-severe," or vocationally insignificant. AR, p. 23. On the other hand, the ALJ found that Plaintiff has the following mental limitations, which appear to be vocationally significant: "The claimant could perform detailed tasks and instructions; have less than occasional

interaction with the public; and adapt to infrequent change in the workplace." AR, p. 25.  2) On one hand, the ALJ found that "[t]he medical opinions of Dr. Tucker and Dr. Azimi regarding the claimant's levels of mental functioning are given less weight than the opinions of Dr. Blazina and Dr. Sherrod inasmuch as these two doctors observed the claimant during clinical testing." AR, p. 25.  On the other hand, the ALJ found that "[t]he undersigned gives greater weight to the opinions of Dr. Tucker and Dr. Azimi than the opinions of Dr. Blazina, Ms. Hawkins, and Dr. Sherrod because the assessment of Dr. Tucker and Dr. Azimi are most consistent with the evidence and the claimant's reported activities." AR, p. 37.

The ALJ's finding of non-severe mental impairments (the first inconsistency identified above) was, at worst, harmless error because an ALJ's failure to recognize an impairment as severe (at Step 2 of the sequential evaluation process) is "legally irrelevant" if (as here) the ALJ's decision reflects that the ALJ considered the limiting effects of all impairments (severe and non-severe) in determining the claimant's RFC at subsequent steps of the evaluation process. *Anthony v. Comm'r of Soc. Sec.*, 266 F. App'x 451, 457, 2008 WL 508008 (6th Cir.) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The second inconsistency identified above reflect, at worst, harmless error because the opinions of Drs. Blazina, Tucker, Azimi, Sherrod and Ms. Hawkins (in other words, all of the medical opinions) indicate only relatively-minor mental limitation.  Specifically, Dr. Tucker found that Plaintiff is "not significantly limited" in 13 out of 20 functional areas and "moderately limited" in 7 areas.  Dr. Azimi concurred with Dr. Tucker's findings.  Ms. Hawkins / Dr. Sherrod found that limitation is absent or minimal in 6 out of 10 areas and mild (defined as slight) in 4 areas.

The findings of any one or all of the medical sources are adequately accommodated by the ALJ's finding that Plaintiff "could perform detailed tasks and instructions; have less than occasional interaction with the public; and adapt to infrequent change in the workplace." AR, p. 25. Any error was,

11

therefore, harmless. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Sec'y of Health & Human Servs.*, 869 F.2d 1055, 1057 (7th Cir. 1989)) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result").

Plaintiff produces a grid / chart in which he lists each specific finding from Drs. Tucker, Azimi, Sherrod, and Rutherford. Docket 19, pp. 13-14. The chart is unpersuasive because, with the possible exception of Dr. Rutherford's findings (discussed below), all findings are consistent with the ALJ's mental RFC findings.

In 2005, Dr. Rutherford answered affirmatively when asked "Is it reasonable that the patient's pain, medical condition, or medication would cause lapses in concentration or memory on a regular basis?" AR, p. 621. When asked how often such lapses occur (several hours 3 or more days a week, daily for several hours a day, or other), Dr. Rutherford answered "other" and specified "variable." *Id.* In 2014, Dr. Rutherford was asked "How often does the patient experience pain severe enough to interfere with attention and/or concentration?" and Dr. Rutherford responded "constantly." AR, p. 1388. Dr. Rutherford did not identify any clinical basis for these findings. Either Dr. Rutherford's findings are consistent with the ALJ's mental RFC findings or the ALJ was not required to give them controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (A treating-source medical opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record").

The ALJ's mental RFC findings were, at worst, harmless error.

**2(a), (b), and (c). To the extent Dr. Rutherford's disabling 2014 opinion purported to relate back to January 2004, the ALJ's decision gave good reasons for rejecting it.**

The rules for weighing medical opinions generally require that an ALJ give greatest weight to the opinion of a treating source and more weight to the opinion of an examining than a non-examining source. 20 C.F.R. §§ 404.1527(a), (b), and (c).

A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2).

When an ALJ decides not to give a treating source's medical opinion controlling weight, it might nevertheless be entitled to greater weight than any other opinion in the administrative record. The weight an ALJ gives the treating-source opinion must be evaluated in light of certain factors: "When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." *Id.* Those factors are: Length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; and specialization.

"We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." *Id.*

In giving his disabling 2014 opinion, Dr. Rutherford was asked "Since when have these limitations been at this severe?" and Dr. Rutherford responded since "01/2004." AR, p. 1388.

The ALJ's (implicit) rejection of this response (by Dr. Rutherford relating his disabling opinion back to January 2004) was supported by substantial evidence for three reasons: 1) Plaintiff alleges that he became disabled on May 24, 2005 (not January 1, 2004). An ALJ is not required to accept a medical source's disabling opinion for a period of time in which Plaintiff does not allege disability. 2) When asked to identify what "findings … support the above conclusions," Dr. Rutherford responded see "attached MRI." AR, p. 1388. The attached MRI was a lumbar MRI from January 2013. AR, pp. 1389-1390. Because Plaintiff has a progressively-deteriorating impairment, an MRI from 2013 would be expected to show greater limitation than existed in 2004. 3) Dr. Rutherford's opinion of disability as of January 2004 is inconsistent with Dr. Allen's subsequent 2008 opinion that Plaintiff did "delightfully"

13

well after corrective surgery and "could work, although [he] would have to avoid repetitive bending and heavy lifting, by heavy I mean over 50 pounds on occasion and over 30 pounds repetitively." AR, pp. 696 and 699; *compare* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *3 (One "obvious inconsistency" that prevents a treat source's medical opinion from being entitled to controlling weight is "when two [treating] medical sources [e.g., Drs. Rutherford and Allen] provide inconsistent medical opinions about the same issue"). Dr. Rutherford's disabling 2004 opinion is also inconsistent with the subsequent non-disabling 2011 opinions of Drs. Johnson, Montague-Brown, and Thrush. *Compare* 42 U.S.C. § 423(d)(1)(A) (To be disabling, an impairment must have "lasted or can be expected to last for a continuous period of not less than 12 months").

To the extent it purported to relate back to January 2004, the ALJ's decision gave good reasons for rejecting Dr. Rutherford's disabling 2014 opinion.

## V. RECOMMENDATION

Because Plaintiff's arguments are unpersuasive and the ALJ's decision was supported by substantial evidence and in accord with the rules for weighing medical opinions, the Magistrate Judge RECOMMENDS that the Court DENY Plaintiff's Motion for Judgment on the Record (Docket 18); AFFIRM the final decision of the Commissioner; and DISMISS Plaintiff's complaint.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).